IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | * | |
| | * | |
| v. | * | Criminal No. JFM-09-0328 |
| | * | |
| HARVEY NUSBAUM, ET AL. | * | |
| | ***** | |

OPINION

The United States has filed a motion in limine to preclude defendants from presenting evidence or arguing that defendants were operating as a joint venture.  Defendants, in turn, have filed a motion in limine authorizing them to introduce evidence and present argument of a single entity defense.  The joint venture/single entity issue is also raised by a motion in limine filed by the United States to preclude expert testimony and compel expert disclosures and by a motion filed by defendants to permit them to present evidence and expert testimony regarding a single entity defense.  For the reasons stated briefly in this memorandum, the motions in limine of the United States will be granted, and the motions in limine of defendants will be denied.

At the hearing held on November 13, 2009, over the objection of defendants I required them to make a proffer of the facts they assert entitled them to assert a joint venture/single entity defense.  The proffer essentially contains two parts:  evidence that persons then associated with Provident Bank (that lent money to defendants for the purpose of making purchases at tax sales) knew that defendants were "teaming up" with competitors at the tax sales and proposed expert testimony that the "collaboration" between defendants and the "Berman Group" constituted a partnership or other joint venture.  This proffer is not sufficient to entitle defendants to present a

1

joint venture/single entity defense.

Arguably, the fact that defendants allegedly disclosed their bid-rigging activities to their lender reflects that they did not believe that their activities were unlawful. However, big-rigging is a "general intent," rather than a "specific intent" crime, and the Government need not prove that defendants knew that their actions violated the law but only that they voluntarily and intentionally participated in the big-rigging. *See, e.g.*, *United States v. U.S. Gypsum Co.*, 438 U.S. 442, 446 (1978); *United States v. Smith Grading & Paving, Inc.*, 760 F.2d 527, 533 (4th Cir. 1985). Therefore, the fact that defendants disclosed to third parties that they were teaming up with their competitors is immaterial.[1]

The fact that the arrangement between defendants and the Berman Group meets the definition of "joint venture" under Maryland law is also not dispositive. A bid-rigging cartel may well constitute a joint venture under state law but that does not mean that the venture constitutes a single entity so as to provide a defense to a bid-rigging charge under federal antitrust law. *See Addamax Corp. v. Open Software Found., Inc.*, 152 F.3d 48, 50 n.2 (1st Cir. 1998) ("The phrase 'joint venture' is often used to describe a venture, <u>other than one engaged in naked per se violations (like a price fixing cartel)</u>, that represents a collaborative effort between companies . . . .") (Emphasis added). To constitute a single entity under federal antitrust law, a joint venture must have an existence and purpose extrinsic to price fixing. *See, e.g.*, *Texaco, Inc. v. Dagher*,

---

1 Defendants have also filed a motion for leave to issue seven subpoenas *duces tecum*. It appears that the evidence sought by these subpoenas is for the purpose of establishing that other third parties were aware of the nature of defendants' relationship with the Berman Group. Because I am holding that any such knowledge by third parties is immaterial, I will deny defendants' motion for leave to issue the subpoenas. If defendants wish to obtain other information from third parties that is material, I will authorize the issuance of subpoenas they request.

547 U.S. 1 (2006) (joint venture's purpose was to refine and sell gasoline).[2]  Here, the evidence proffered by defendants would merely establish that defendants were engaging in collaborative activity intrinsic to their horizontal price fixing, i.e., bid-rigging at tax auction sales.  In effect, their argument is tautological:  bid-rigging constitutes a joint venture and therefore we can defend against a charge of bid-rigging on the ground that we were participating in a joint venture.  This argument makes no sense and flies in the face of the well established principle that price-fixing cartels are *per se* illegal.  *See, e.g.*, *United States v. Rose*, 449 F.3d 627, 630 (5th Cir. 2006); *United States v. W.F. Brinkley & Son Constr. Co., Inc.*, 783 F.2d 1157, 1160-62 (4th Cir. 1986).

      A separate order effecting the rulings made in this memorandum is being entered herewith.

DATE:  12/4/2009               ___/s/_____
                                                      J. Frederick Motz
                                                      United States District Judge

---

[2] Even if a joint venture does allegedly have an existence and purpose extrinsic to price fixing, it may still be challenged as a sham.  *See Dagher*, 547 U.S. at 6 n.1.  In the instant case, however, the issue is not whether the joint venture alleged by defendants is a sham but whether this purported joint venture is a single entity within the meaning of *Dagher*.